IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| KIM RENETTE, a single person | ) | |
| | ) | No. 38804-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRIANNA COATES, and TYLER | ) | UNPUBLISHED OPINION |
| COATES and the marital community | ) | |
| therein; T&E TRUCKING, LLC; | ) | |
| NATIONWIDE AGRIBUSINESS | ) | |
| INSURANCE COMPANY; CODY | ) | |
| LOPEMAN and KASSIDY LOPEMAN, | ) | |
| and the marital community therein; | ) | |
| LOPEMAN HAY & CATTLE, LLC; | ) | |
| JAMES LYON and JANE DOE LYON | ) | |
| and the marital community therein, | ) | |
| WESTERN NATIONAL MUTUAL | ) | |
| INSURANCE COMPANY; JOHN | ) | |
| DOE(S) 1 - 10 and the marital community | ) | |
| therein, | ) | |
| | ) | |
| Appellants. | ) | |

SIDDOWAY, J.P.T.* — We granted discretionary review of the trial court's refusal

to dismiss this personal injury action for lack of personal jurisdiction, where it is

undisputed that Kim Renette failed to effect timely service of process on any defendant,

---

* Judge Laurel H. Siddoway was a member of the Court of Appeals at the time argument was held on this matter. She is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

including defendants James Lyon, T&E Trucking, LLC, and its owners Brianna and Tyler Coates (Defendants), who sought review. We reverse and remand with directions to dismiss the complaint with prejudice.

## FACTS AND PROCEDURAL BACKGROUND

On June 22, 2018, Kim Renette was involved in an automobile accident. She was driving on State Route 902, near Medical Lake, when a large cab-over engine tractor-trailer driven by James Lyon collided into the rear of her car. Mr. Lyon was driving the vehicle in the course of his employment by T&E Trucking, LLC. The LLC is owned by Tyler and Brianna Coates.

The collision caused Ms. Renette's head to strike the driver-side window and left her with allegedly serious debilitating injuries, including back pain, limited mobility in her right arm and shoulder due to a rotator cuff separation, short-term memory loss, an acquired stutter, and aggravation of posttraumatic stress disorder.

By January 2019, Ms. Renette had retained Craig Swapp & Associates to represent her in asserting a personal injury claim. The Swapp firm provided notice of a claim to Brianna Coates's insurer, Nationwide Agribusiness Insurance Company (Nationwide), which requested copies of Ms. Renette's medical records and bills. The Swapp firm apparently sent some of the requested documents, but little other information was exchanged in furtherance of any settlement.

2

In December 2020 or January 2021, Ms. Renette retained a new law firm, Robert Cossey & Associates, to take over the claim. Attorney Aaron Jones assumed responsibility for the matter, and in February 2021 his paralegal notified Matthew Owen, the Swapp firm's contact at Nationwide, to direct further communications to herself and Mr. Jones.

On June 14, 2021, Mr. Jones sent Mr. Owen a three-page letter in which he described the accident and Ms. Renette's injuries and damages, and asked that Nationwide tender insurance policy information and agree to mediation. He stated that he would be filing suit and submitting a copy of the complaint to Nationwide, but encouraged mediation as "mutually beneficial especially in light of your acceptance of liability on behalf of your insured." Clerk's Papers (CP) at 119.

Paula Jones,[1] another Nationwide adjuster, sent a response to Mr. Jones three days later, notifying him that she was now handling Ms. Renette's claim. She said that given the limited information provided by Ms. Renette to date, disclosure of the policy information was not warranted, although she did confirm that Ms. Coates had an active business auto policy on the date of loss. She stated that Nationwide had *not* admitted liability of its insured but "appreciate[d] any opportunity . . . to attempt to reach an early

---

[1] Because of the potential for confusion between attorney Jones and adjuster Jones, we refer to Paula Jones by her first name. No disrespect is intended.

resolution." CP at 125.  Given the lack of supporting documentation with which to

evaluate the claim, she stated that Nationwide was not ready to agree to "pre-litigation

mediation." *Id.*

> She concluded the letter with a warning:
>
> [I]f a Complaint has not been timely filed before the Statute of Limitations
> deadline of 6/22/2021, the defense counsel will be asked to assert (and to
> not waive) any and all applicable defenses, to include a Motion to Assert
> that the filing is barred in violation of the Statute of Limitations.
> Nationwide has been consistent with the expectation of the 3 year deadline
> and recommend[s] that you act accordingly.  If you determine it is the best
> course of action to file a Complaint, I would appreciate a complimentary
> copy of the same.

*Id.*

Mr. Jones filed a summons and complaint the next day, naming as defendants Mr.

Lyon, the Coateses, T&E Trucking, LLC, Nationwide, and several others.[2]  Mr. Jones did

not provide Paula with a courtesy copy of the complaint, but the fact that it was filed was

brought to her attention by Nationwide's lawyer.  Karen Bamberger, outside counsel for

Nationwide, filed a notice of appearance on behalf of the Defendants on June 28.  It

included the usual language that it did not constitute a waiver of objections to service of

process, jurisdiction or venue.

The filing of the complaint on June 18 tolled the period within which Mr. Jones

was required to serve the Defendants for 90 days, meaning service needed to be

---

[2] Nationwide and the others were later dismissed from the action by stipulation.

4

accomplished by September 16, 2021. *See* RCW 4.16.170. Upon receiving Ms. Bamberger's notice of appearance, Mr. Jones forwarded Ms. Bamberger a copy of the letter/mediation request he had sent to Mr. Owen, informed her that he would be on paternity leave for the month of July, and stated that his paralegal "will be available to address any inquiries about records while I am out of the office for July." CP at 127.

In July and August, Ms. Bamberger corresponded with personnel at Mr. Jones's office about providing a stipulation and medical release so that Nationwide could obtain copies of Ms. Renette's medical records from her providers. On August 10, Ms. Renette executed an authorization for release of medical records, and Mr. Jones signed a related stipulation on August 13. On August 17, Ms. Bamberger inquired of Mr. Jones whether a demand letter would be forthcoming. Mr. Jones still had not served any of the Defendants.

Two weeks before the 90-day deadline for service, a paralegal at Mr. Jones's office who had been assigned the responsibility of addressing service of process mailed a letter by certified mail, return receipt requested, to Mr. Lyon at his Ellensburg address. The letter, which was signed by Mr. Jones, requested insurance information from Mr. Lyon, and stated, "We are providing you with a copy of the Complaint and Summons that we have filed in this matter, as well as the Notice of Appearance we received." CP at

151. The letter did not ask Mr. Lyon to sign an acceptance of service. No copy of the letter was sent to Nationwide or Ms. Bamberger.

On the afternoon of September 14—two days before the expiration of the deadline for service—a judicial assistant in the superior court department to which Ms. Renette's case was assigned e-mailed Mr. Jones and Ms. Bamberger about an upcoming status conference. The e-mail notified them that:

> It is this department's policy that if the Summons/Complaint has been served, and answer filed, and a Civil Joint Status Report completed and submitted to this department, a Civil Case Schedule Order can be issued in lieu of the Status Conference.

CP at 155. Mr. Jones responded by e-mail that afternoon, copying Ms. Bamberger. He stated:

> The parties have been in mediation status and an answer has not been filed yet. Is it possible to continue the status conference out two months?

CP at 154.

Ms. Bamberger did not respond to the e-mails. She later testified by declaration that she did not respond because she had taken a red-eye flight to Tennessee the morning of the 14th to visit her 85-year old mother, who was hospitalized for an emergency surgery.

The deadline for serving process passed on September 16 without any defendant having been served. On September 17, Ms. Bamberger filed an answer asserting the

affirmative defenses of insufficient service, insufficient service of process, and lack of personal jurisdiction. On September 24, she filed a CR 12(b) motion to dismiss based on the affirmative defenses.

Mr. Jones's office caused personal service to be effected on Mr. Lyon on September 27,[3] and on T&E Trucking, LLC's registered agent on October 5.

The certified letter that Mr. Jones's paralegal had mailed to Mr. Lyon in August was returned to Mr. Jones's office on October 2 as unclaimed.

In opposing the Defendants' motion to dismiss, Ms. Renette argued they had waived their affirmative defenses by engaging in substantive discovery, that the statute of limitations should be equitably tolled, and that because Nationwide was aware of the complaint and service was effected before the motion was heard, the issue of service was essentially nullified.

The trial court denied the motion to dismiss. An order presented by Ms. Renette included 15 "findings of fact," nothing identified as a conclusion of law, and the court's order. The trial court made some handwritten modifications to the "findings."

A motion by the Defendants for reconsideration was denied. The Defendants sought discretionary review, which was granted.

---

[3] Mr. Lyon was served at the same address to which the certified letter had been addressed.

No. 38804-2-III
*Renette v. Coates, et al.*

ANALYSIS

Mr. Lyon, T&E Trucking, LLC, and the Coateses assign error to the trial court's refusal to dismiss the complaint.

I.    STANDARD OF REVIEW

CR 12(b) authorizes a handful of defenses to be presented not only in the responsive pleading, but by motion, including the defenses of lack of jurisdiction over the person (12(b)(2)), insufficiency of process (12(b)(4)), insufficiency of service of process (12(b)(5)), and failure to state a claim on which relief can be granted (12(b)(6)).

Whether service of process was proper is a question of law that we review de novo, as is a ruling on personal jurisdiction when the underlying facts are undisputed. *Chengdu Gaishi Elecs., Ltd. v. G.A.E.M.S., Inc.*, 11 Wn. App. 2d 617, 622-23, 454 P.3d 891 (2019); *Precision Lab'y Plastics, Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 725, 981 P.2d 454 (1999). Ms. Renette argues that we must review the trial court's "extensive" findings of fact for abuse of discretion, however. Br. of Resp't at 3.

A trial court's findings of fact on a CR 12(b) motion are reviewed for substantial evidence, *e.g.*, *Harvey v. Obermeit*, 163 Wn. App. 311, 318, 261 P.3d 671 (2011), but only if they are bona fide findings of fact. If a determination concerns whether evidence shows that something occurred or existed, it is properly labeled a finding of fact, but if

8

the determination is made by a process of legal reasoning from facts in evidence, it is a conclusion of law. *State v. Niedergang*, 43 Wn. App. 656, 658-59, 719 P.2d 576 (1986).

Many of the trial court's "findings of fact" in this case are actually conclusions of law, such as the court's "finding" that the failure to serve any defendant was the result of excusable error (finding 9), that Defendants' notice of appearance did not preserve the defense of insufficient service of process (finding 11), that equitable tolling of the statute of limitations is appropriate in this matter (finding 13), and that good cause exists to deny the motion to dismiss (finding 14). When conclusions of law are mislabeled as findings of fact, we treat them on appeal as what they are. *E.g.*, *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

"Proper service of the summons and complaint is a prerequisite to a court's obtaining jurisdiction over a party. *Harvey*, 163 Wn. App. at 318. It is undisputed that Ms. Renette did not cause any of the Defendants to be served within the statute of limitations. While the Defendants are the appellants, we analyze the issues on appeal by reviewing Ms. Renette's three arguments that the trial court properly denied the motion to dismiss.

II.     THE DEFENDANTS DID NOT WAIVE THE STATUTE OF LIMITATIONS BY THE CONDUCT OF DISCOVERY

Ms. Renette first argues that "[t]he trial court correctly applied the waiver doctrine because appellants engaged in litigation unrelated to the statute of limitations, delayed

filing an answer, and continued to conduct discovery." Br. of Resp't at 18 (boldface and capitalization omitted). The Defendants dispute that waiver was a basis for the trial court's denial of their motion, pointing out that the court struck Ms. Renette's proposed finding that "Defendants conducted themselves in a manner inconsistent with the later assertion of the defense of insufficient service, and the Court is justified in declaring a waiver of that defense." CP at 174 (striking the second sentence of finding 12). This would be persuasive were it not for the fact that the trial court entered two other, inconsistent findings that the Defendants engaged in "discovery" unrelated to personal service. CP at 173-74 (findings 7 and 10). Ms. Renette also points out that the court's 13th finding, addressing equitable tolling, begins with the word "Additionally," suggesting that equitable tolling was being identified as the court's *second* basis for denying the motion to dismiss. *Id.* at 74. Finally, we could affirm a trial court's ruling on any grounds the record and the law support. *State v. Grier*, 168 Wn. App. 635, 644, 278 P.3d 225 (2012) (citing *State v. Costich*, 152 Wn.2d 463, 477, 98 P.3d 795 (2004)).[4]

Waiver in this context is sometimes defined as the "'voluntary and intentional relinquishment or abandonment of a known right.'" *Jet Set Travel Club v. Houston Gen. Ins. Grp.*, 30 Wn. App. 882, 884, 639 P.2d 220 (1982) (quoting *Morrissette v. Cont'l Life*

---

[4] We are unpersuaded by Ms. Renette's reliance on the court's finding that "the analysis set forth in *Lybbert v. Grant County*, 141 Wn.2d 39, 1 P.3d 1124 (2000), is instructive," CP at 174, since the pinpointed citation of that decision could cut either way.

& *Acc. Co.*, 9 Wn. App. 789, 791, 514 P.2d 1391 (1973)). Even a party who properly pleads insufficient service of process may waive the defense "if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense." *King v. Snohomish County*, 146 Wn.2d 420, 424, 47 P.3d 563 (2002). "The doctrine [of waiver] is designed to prevent a defendant from ambushing a plaintiff during litigation either through delay in asserting a defense or misdirecting the plaintiff away from a defense for tactical advantage." *Id.*

Ms. Renette does not contend that the Defendants were dilatory in asserting their defenses, nor could she; they ultimately filed their answer before even being served. She relies instead on an argument that the Defendants engaged in inconsistent conduct by engaging in discovery. "[W]here a party engages in considerable discovery not related to the [jurisdictional] defense" it can support a finding of waiver. *Harvey*, 163 Wn. App. at 324. "[A] party must do more than simply conduct discovery," however; it must also act in a way that "indicate[s] that it has abandoned the defense." *Id.* at 325, 323.

The "discovery" on which Ms. Renette relies is the Defendants' request that Ms. Renette provide a medical release and stipulate to her providers' production of her medical records. She characterizes this as "discovery" because the stipulation includes language about the permitted use in future litigation of the records produced, as permitted by CR 29; that the stipulation was produced on pleading paper under the caption of the

11

case; and that it provided that the medical providers could produce the records "in lieu of deposition." CP at 142. The Defendants dispute its characterization as discovery. To us, whether or not it was traditional "discovery" is less important than whether anything about it could be understood as relinquishing a known right.

More important are the following: Ms. Renette proposed and Nationwide had expressed agreement to information-sharing and mediation in lieu of litigation, Nationwide had recently and clearly communicated its intent to assert a jurisdictional defense if available, the Defendants engaged in the "discovery" for only a couple of months and asserted their defenses immediately upon the defenses becoming available, and the Defendants engaged in no misdirection or deceptive conduct.

It was Mr. Jones, in his letter to Mr. Owen, who broached resolution of the claim by information-sharing and mediation, stating in his letter on June 14:

> [W]e are requesting and offering to engage in pre-litigation mediation. . . .
> This is mutually beneficial especially in light of your acceptance of liability
> on behalf of your insured. . . . In anticipation of the mediation, we will
> work with you in order to provide documentation to you and your
> representatives, so that we can meaningfully participate in and arrive at a
> mediated outcome.

CP at 118-19. Paula's response stated that she "very much appreciate[d] any opportunity for us to attempt to reach an early resolution of this case," while at the same time making clear that would not be possible without being provided with more documentation of Ms.

Renette's medical care and expenses. CP at 125. For Ms. Bamberger to obtain the medical release and stipulation was completely consistent with this nonlitigation purpose.

Nationwide had been very clear about its intent to assert any jurisdictional defense, telling Mr. Jones in no uncertain terms, on June 17, that if Ms. Renette did not act within the statute of limitations "defense counsel will be asked to assert (and to not waive) any and all available defenses," and that "Nationwide has been consistent with the expectation of the 3 year deadline." CP at 125.

The "discovery" on which Ms. Renette relies began to be discussed in July, had been authorized by Ms. Renette and Mr. Jones in mid-August, and had only been in process for a little over a month when it became apparent for the first time that Ms. Renette had allowed the deadline for service to pass without serving any defendant. The Defendants asserted the resulting defenses immediately.

Ms. Renette does not identify any intervening conduct by the Defendants that can fairly be characterized as misdirecting or deceptively suggesting that they were abandoning a known right. In *Lybbert v. Grant County*, the principal case on which Ms. Renette relies, it was "[o]f particular significance" to the Supreme Court that the Lybberts served Grant County with interrogatories designed to determine if the county had an insufficient service of process defense, and the county conveniently provided tardy

13

responses. Timely ones would have given the Lybberts time to cure their defective service. 141 Wn.2d 29, 42, 1 P.3d 1124 (2000).

*Lybbert*'s discussion of this court's decision in *Romjue v. Fairchild*, 60 Wn. App. 278, 803 P.2d 57 (1991), observed that this court, too, "took particular note" of the fact that before the running of the statute of limitations, plaintiff's attorney wrote defense counsel to express his understanding that the Defendants had been served, which defense counsel conveniently ignored until it was too late for the plaintiff to cure the service defect. 141 Wn.2d at 41.

In this case, the Defendants had no reason to expect that Mr. Jones's office would fail to accomplish service by the September 16 deadline until it failed to do so. They had no notice that a paralegal in Mr. Jones's office had mailed the summons and complaint to Mr. Lyon rather than arrange for it to be personally served. Ms. Renette has offered no reason why personal service of process on one of the Defendants by the September 16 deadline would not have been simple. The identity of the registered agent for Mr. Lyons's employer was available. Mr. Jones's office had Mr. Lyon's correct residence address.

As for the September 14 e-mail from the superior court, Ms. Renette misdescribes the communication in two ways. The judicial assistant did not ask the parties' lawyers if service of process had been accomplished; she simply gave notice of circumstances under

which they would not be required to attend the scheduling conference. No one in Ms. Bamberger's office would have been under the impression that the court was seeking a report on the status of service of process. Nothing Mr. Jones said in his response would have struck anyone in Ms. Bamberger office as requiring correction; he did not say that any defendant had been served. And Ms. Bamberger offers an explanation why she, personally, would not have seen the communications.

For all of these reasons, waiver does not apply.

III. THE DEFENDANTS' FRAMING OF THEIR REQUEST FOR RELIEF DID NOT RENDER THE STATUTE OF LIMITATIONS IRRELEVANT

Ms. Renette next argues that "[t]he [trial] court correctly denied the motion because Defendants asked the court to dismiss the case on grounds of insufficient service and all parties were properly served by the time the court ruled." Br. of Resp't at 22 (boldface and some capitalization omitted).

In this single-paragraph argument, unsupported by any legal authority, Ms. Renette contends that the operative language of the motion to dismiss (in her view) relies only on jurisdictional and insufficiency of process grounds, rather than the statute of limitations. As a result, she argues, all she had to do to defeat the motion was effect service before the motion was heard—which she did. *See* Br. of Resp't at 22 (relying on CP at 80, lines 20-25).

15

Contrary to her argument, the Defendants tied their jurisdictional and service of process-related grounds to the expiration of the statute of limitations. *See* CP at 83-85. No different framing of their motion was required.[5]

IV.     THE FACTORS NECESSARY FOR EQUITABLE TOLLING ARE NOT PRESENT

Ms. Renette's final argument is that "[t]he trial court was correct to apply equitable tolling to Ms. Renette's statute of limitations [defense] because she was reasonably diligent and the procedural oversight was excusable neglect." Br. of Resp't at 23 (boldface and some capitalization omitted).

The doctrine of equitable tolling permits a court to allow an action to proceed even though the statutory time period for commencing the action has elapsed. *In re Pers. Restraint of Bonds*, 165 Wn.2d 135, 141, 196 P.3d 672 (2008) (plurality opinion). Equitable tolling is "a narrow doctrine to be used only sparingly and [that is] not applicable more generally to 'garden variety' claims of neglect." *In re Pers. Restraint of Haghighi*, 178 Wn.2d 435, 447-48, 309 P.3d 459 (2013).

> Four factors limit application of the doctrine:
>
> Washington law allows equitable tolling of a statute of limitations in a civil suit when (1) the plaintiff has exercised diligence, (2) the defendant's bad faith, false assurances, or deception has interfered with the plaintiff's diligent efforts, (3) tolling is consistent with (a) the purpose of the

---

[5] This is a frivolous argument. If a different framing of the motion were required, we would remand for the Defendants to bring the differently-framed motion. It would be just as viable now as it was when brought initially.

16

underlying statute and (b) the purpose of the statute of limitations, and
(4) justice requires tolling the statute of limitations.

*Fowler v. Guerin*, 200 Wn.2d 110, 113, 515 P.3d 502 (2022). Each factor must be

satisfied for the doctrine to apply. *Id.* at 124-25. The burden is on the party seeking

equitable tolling to establish compliance with all four factors. *Bonds*, 165 Wn.2d at 144.

There is no evidence that Ms. Renette exercised diligence in serving the

Defendants. Her single effort at timely service was undertaken unreasonably late and

was inexcusably ineffective.

The second factor is required because "a defendant should lose the benefits of

finality provided by statutes of limitation only when that defendant has engaged in

conduct that justifies making an exception." *Fowler*, 200 Wn.2d at 121. For the reasons

we discussed in connection with waiver, there is no evidence that any bad faith, false

assurances, or deception on the part of the Defendants interfered with Ms. Renette's

effort to effect service.

Given that Ms. Renette fails to demonstrate either of the first two factors, we need

not address the third and fourth; nevertheless, *Fowler* reminds us that "statutes of

limitation reflect the importance of finality and settled expectations" and that statutory

time bars serve as a "legislative declaration of public policy which the courts can do no

less than respect, with rare equitable exceptions." *Id.* at 118 (internal quotation marks

17

No. 38804-2-III
*Renette v. Coates, et al.*

omitted) (quoting *Bilanko v. Barclay Ct. Owners Ass'n*, 185 Wn. 2d 443, 451-52, 375 P.3d 591 (2016)).

We reverse the order denying the motion to dismiss and remand with directions to dismiss the complaint with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.P.T.

WE CONCUR:

Pennell, J.

Staab, J.